SARAH H. TROWBRIDGE, in equity, *vs.* AARON B. HOLDEN, administrator & another.

*Witness. Gift.*

In the hearing of a bill in equity, brought to compel the administrator of the estate of the plaintiff's husband to indorse a note alleged to have been given to her by her husband, the deposition of the plaintiff, to prove the gift, is inadmissible.

To establish a gift of the note of a third person, from a husband to his wife, the evidence should be such as to satisfy the court not only that the donor said and did what is necessary to constitute a valid gift, but that it was, in very deed, his intention, at the time, to part with his own property in it, and bestow it upon the donee, for her independent and individual use.

BILL IN EQUITY, heard on bill, answer, and proofs.

The bill is against the administrator of the estate of the plaintiff's husband and his only child and heir at law, and, after setting out the death of her husband and the appointment of the defendant, Holden, alleges substantially :

That in November, 1866, Charles Trowbridge, who was then, and for more than thirty years had been her husband, owning certain land (described), and buildings thereon, situate in Portland, conveyed the same to Caroline M. Fosdick, for one thousand dollars cash, and a note for one thousand dollars, payable in six years, signed by herself and husband, and secured by a mortgage upon the premises ; and that the plaintiff joined in her husband's deed for the purpose of releasing her right of dower in the premises.

That in consideration of the plaintiff's release of dower in the premises, and also in their homestead, in a certain mortgage deed of the same, and in consideration of love and affection, her husband, at the time the said note was given, gave the same to her, to be her own property, with the right to collect the same to her own use, when it should become due ; that she has always had, and still has, possession of the same ; and that when it was given her, her husband promised and intended to indorse it, but neglected so to do ; that he never assigned to her the mortgage, securing the note, but that he, until his death, held the mortgage in trust for her.

That in August, 1869, since the appointment of the respondent, Holden, the plaintiff notified him that she owned the note, and requested him to indorse it and assign the mortgage in his official capacity; that he declined, and claimed the note and mortgage as part of the assets of her husband's estate.

That the said administrator, in June, 1869, commenced proceedings to collect the note by foreclosing the mortgage, by an action at law against the mortgager, which is now pending.

Prayer, that the respondent may answer; and that the administrator be required to indorse the note and assign the mortgage to the complainant; and that he be ordered, in case he shall recover in the action upon the mortgage, to hold the land and the money (if any), paid upon the conditional judgment therefor, in trust to the use of the complainant, etc.

The answers denied the gift.

Plaintiff put in the deposition of herself tending to prove the gift.

Also, the depositions of Charles S. Trowbridge, nephew of the complainant, and of Anna Latham, a boarder there, from which it appeared that one day at dinner, about two weeks after the sale of the house, the deponent saw Charles Trowbridge hand his wife a paper, saying to her at the same time, "Here is a present for you;" that she asked what it was, and her husband answered, "Look and see;" that she thereupon read it and remarked, "This seems to be a note;" that Mr. Trowbridge rejoined, "Yes; it is a note for a thousand dollars, secured by a mortgage on the house which I sold Fosdick;" that Mrs. Trowbridge expressed her thanks to her husband, and he told her 'to put the note away where she could find it, and take care of it; and that some time afterwards, deponent heard Mr. Trowbridge ask his wife when she was going to collect the interest on that note.

From the deposition of Rhoda N. Young, it appeared, that, in the fall of 1867, while taking care of her daughter at Mr. Charles Trowbridge's, he came in and asked his wife (complainant) for the mortgage note of Mrs. Fosdick; that he said "he could not find it among his papers at the factory;" that the complainant went up

stairs and came down and said, "here it is;" that it was in a little box with some other papers; that the deponent passed into another room and did not see whether the complainant handed any paper to her husband; and that her impression was that Mr. Trowbridge thereupon went out of the house.

From the deposition of Daniel P. Young (husband of the other respondent), it appeared that about ten days after Charles Trowbridge's death, the deponent had a conversation with Charles S. Trowbridge (witness for plaintiff), and asked him if he knew how much Charles Trowbridge was owing; that C. S. Trowbridge replied that he did; that witness then asked him if he probably had enough to pay what he was owing; that Trowbridge responded that "there was one bill due to the estate which would be enough to pay all the estate owed;" that witness asked what bill, and Trowbridge replied, "Mrs. Fosdick's note of one thousand dollars, secured by a mortgage on the place."

*Davis & Drummond*, for the complainant, contended that the complainant's deposition, and other proof, with her possession, established her title.

1. The assignment or delivery of a note, though it is payable "to order," without indorsement by the payee, will pass the property. 2 Parsons on Notes and Bills, 52, 53; *Littlefield* v. *Smith*, 17 Maine, 327; *Grover* v. *Grover*, 24 Pick. 261.

2. The administrator has power in such case to indorse the note for his intestate. 1 Parsons on Notes and Bills, 157; Byles on Bills, 40; *Rand* v. *Hubbard*, 4 Met. 252, 258; *Malbone* v. *Southard*, 36 Maine, 147.

3. He may be compelled to indorse, by a bill in equity. 1 Parsons on Bills and Notes, 159, 160; Byles on Bills, 119; *Walkins* v. *Marsh*, 2 Jac. & Walk. 242.

4. And he may also be compelled, in equity, to assign the mortgage. *Johnson* v. *Candage*, 31 Maine, 28; *Moore* v. *Ware*, 38 Maine, 496; *Stone* v. *Locke*, 46 Maine, 445.

*J. & E. M. Rand*, for the respondents.

BARROWS, J. Sarah H. Trowbridge, widow of Charles Trow-
bridge, claims that a certain promissory note, in her possession, for
$1000 and interest, payable to the order of said Charles, and not
indorsed by him, and a certain mortgage given to the said Charles
to secure the payment of said note, and never assigned or delivered
by her husband to her, do in fact belong to her, and not to the es-
tate of her deceased husband ; and she brings this bill in equity
against the administrator on her husband's estate, joining the sole
heir at law, as a defendant therein, to compel the administrator to
indorse said note, and assign and deliver said mortgage to her, in
order that she may collect the note for her own use.

If she shows a clear title to the note, as her own property, no
reason is perceived why the administrator should not be required
to do it.

The defendant's counsel do not controvert this, and the authori-
ties cited for the plaintiff seem fully to warrant it.

But the defendants, in their answer, say that they have no rea-
son to believe, and do not believe that she has such title.  The bur-
den of proof is upon her to establish it.  To do this she offers, with
other testimony, her own deposition.  Her testimony, tending to
establish a gift of this note to her, by her husband in his life-time,
and relating to matters occurring before his decease, is plainly inad-
missible under any of our statutes authorizing the examination of
parties as witnesses " in any civil suit, or proceeding at law, or in
equity."  In a suit at common law there is no pretense that her
testimony would be admissible, but the suggestion is that it may be
in equity.

In general, the rules of evidence, and those determining the com-
petency or incompetency of witnesses, and other proofs prevailing
at law, are recognized in equity. *Manning* v. *Lechmere*, 1 Atkyns,
453 ; *Glynn* v. *Bank of England*, 2 Vesey, 41.

While under the civil law, and also in proceedings in equity, it was
always competent for a party, in some form, to obtain the testimony
of the adverse party, in relation to the matter in controversy, if he
chose to take it ; we do not understand that a party in equity was

ever allowed to volunteer his own testimony, in support of his own claim, until it was authorized by express legislative enactment. As before remarked, our statutes do not reach this case, and the testimony of Mrs. Trowbridge, as to the alleged gift, must be excluded.

One may doubtless make a valid gift of a note and mortgage, without indorsing or assigning them by any written instrument. *Borneman* v. *Sidelinger*, 15 Maine, 429 ; *Wing* v. *Merchant*, 57 Maine, 383.

But those who desire to make a disposition of their property, different from that which the law would make in the event of their decease, have it in their power to leave written evidence of their intentions, for the guidance of survivors; and claims of this description, especially when preferred by wives who are so often the depositaries of their husband's papers and valuables, ought always to be supported by evidence of a thoroughly convincing character,—evidence which shall satisfy the court, who are to pass upon it, not only that the deceased said and did what is necessary to constitute a valid gift, but that it was, in very deed, his intention, at the time, to part with his own property, in the subject of the gift, and bestow it upon the donee for his or her independent and individual use.

The depositions of the plaintiff's nephew and niece go to show that one day at the dinner-table, about the time Mr. Trowbridge received this note and mortgage, he took the note out of his pocket and handed it across the table to his wife, saying, " here is a present for you,—take it and take care of it." It is true this may import a gift; but neither this, nor the wife's reply, nor the whole conversation which occurred at the time as detailed by the nephew, nor the time, place, or circumstances of the transaction seems to us to resemble what would be likely to occur between husband and wife, if the husband was designing to devest himself of so considerable a sum, and to bestow it on the wife to be held by her thereafterwards as her own property.

That the nephew did not so understand this conversation, is man-

ifest from his statement to the defendant's witness, after Trowbridge's death, that he left one bill due to him which would be enough to pay all he was owing,—the note of Mrs. Fosdick, secured by a mortgage on the house. The statement of complainant's witnesses, that the husband put off the wife's calls on him for money, by asking her why she did not collect the interest on the note, is more than. offset by the conversation which occurred between the husband and wife at the house in the fall of 1867, as testified to by Rhoda N. Young; Mr. Trowbridge came in and asked his wife for the mortgage note of Mrs. Fosdick,—said he could not find it among his papers at the factory. She went upstairs and came down and said to him, "here it is;" it was in a little box with some other papers. It is reasonable to suppose that if the wife had at that time regarded it as her separate property, she would, at least, have asked him what he was going to do with it.

This certainly seems more as if they both understood that the wife was the custodian rather than the owner of the note.

In fine, we think a business man like this decedent, if he had intended to transfer property to this amount, from himself to his wife to hold as her own, if he did not indorse the note and assign the mortgage, would, at least, have left some better evidence of his intention to make the gift, than this loose talk at a dinner-table.

We do not like to place on record so mischievous a precedent for claims of this sort, as we must do if we lightly sustain one that is supported by evidence so dubious and so liable to misinterpretation. We have no reluctance in reaching this conclusion, because, where there is personal property sufficient to do it, it is always in the power of the probate judge to make reasonable provision for a widow by way of allowance.

We have no occasion to determine whether it was necessary or proper to join the heir at law as defendant, as the entry must be

*Bill dismissed with costs.*

Appleton, C. J.; Cutting, Kent, Walton, Dickerson, and Danforth, JJ., concurred.

Tapley, J., did not concur.